NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

---

TAREK EL HADIDI,

    Plaintiff,

v.

INTRACOASTAL LAND SALES, INC., et al.,

    Defendants.

Civil Action No. 11-3658 (JAP)

**OPINION**

---

PISANO, District Judge.

This matter comes before the Court on Defendant Intracoastal Land Sales, Inc.'s ("Defendant") motion to dismiss or, in the alternative, to transfer this matter pursuant to 28 U.S.C. § 1404(a). Plaintiff Tarek El Hadidi ("Plaintiff") opposes the motion. For the reasons set forth below, the Court will dismiss Count Five of Plaintiff's complaint for failing to state a claim upon which relief can be granted, and will transfer the remaining claims to the United States District Court for the District of South Carolina.

## I.   BACKGROUND[1]

In February 2005, Plaintiff received an invitation to attend a presentation on the Waterway Palms Plantation ("the Plantation"), a subdivision of single family building lots near Myrtle Beach, South Carolina. As the broker responsible for the marketing and selling of lots at

---

[1] In addressing a motion to dismiss, the Court must accept as true the allegations contained in a complaint. *See Toys "R" US, Inc. v. Step Two, S.A.*, 318 F.3d 446, 457 (3d Cir. 2003); *Dayhoff, Inc. v. H.J. Heinz Co.*, 86 F.3d 1287, 1301 (3d Cir. 1996). Accordingly, the facts recited herein are taken from Plaintiff's complaint unless otherwise indicated; they do not represent this Court's factual findings.

the Plantation, Defendant organized and ran the presentation, which was held on February 15, 2005 at the Bridgewater Marriot Hotel in Bridgewater, New Jersey.[2]

After attending the presentation in February, Plaintiff travelled from Newark, New Jersey to Myrtle Beach on a flight Defendant chartered for prospective purchasers in March 2005. Upon arriving at the Plantation, he was given a tour of the planned development and a presentation on the properties available for purchase. Defendant also offered Plaintiff special incentives in an effort to facilitate a quick sale and closing. After receiving and reviewing various documents concerning the properties, including reports relating to the construction schedule at the Plantation, Plaintiff purchased two undeveloped lots.

In September 2005, Plaintiff returned to South Carolina and retained a private builder to develop his lots. When he arrived at the Plantation, however, he alleges that he observed that construction had not proceeded as he expected, and that several of the elements contained in the property reports he received prior to purchase were not being completed per the estimates. As a result, he asserts that the value of his properties decreased and that he was denied the opportunity to realize the benefit of his investments.

On June 24, 2011, Plaintiff filed a complaint against Defendant and several fictitious entities and individuals. Therein, he asserts numerous causes of action, including allegations of: (1) violations of the New Jersey Consumer Fraud Act; (2) negligent misrepresentation; (3) fraud and intentional misrepresentation; (4) unjust enrichment; (5) violation of the New Jersey Deceptive Business Practices Act; and (6) outrage or negligent infliction of mental distress. Plaintiff's allegations are based primarily on alleged misrepresentations by Defendant contained in property reports it furnished to Plaintiff in March 2005. Specifically, Plaintiff asserts that

---

[2] The preview was also held at a number of other sites, including hotels located in Eatontown, New Jersey, Cherry Hill, New Jersey, King of Prussia, Pennsylvania, and Philadelphia, Pennsylvania.

2

Defendant misrepresented the projected completion dates and construction status of the sewer system and various community facilities at the Plantation, including the clubhouse, swimming pool, and tennis courts. He alleges that those misrepresentations influenced his decision to purchase two lots at the Plantation. On July 15, 2011, Defendant filed the instant motion to dismiss Plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, to transfer this action or any remaining claims to the United States District Court for the District of South Carolina.

## II.     STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(6), a court may grant a motion to dismiss if the complaint fails to state a claim upon which relief can be granted. The Supreme Court set forth the standard for addressing a motion to dismiss under Rule 12(b)(6) in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). The *Twombly* Court stated that, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (internal citations omitted). Therefore, for a complaint to withstand a motion to dismiss under Rule 12(b)(6), the "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (internal citations and footnote omitted).

More recently, the Supreme Court emphasized that, when assessing the sufficiency of a civil complaint, a court must distinguish factual contentions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). A complaint will be dismissed unless it "contain[s] sufficient factual

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570).

## III. DISCUSSION

### A. Count Five: New Jersey Deceptive Business Practices Act

As an initial matter, Plaintiff asserts a claim under the Deceptive Business Practices Act, N.J.S.A. § 2C:21-7, a New Jersey criminal statute, in Count Five of his complaint. The Act criminalizes a variety of conduct relating to fraudulent and deceptive practices, including false or misleading statements made for the purpose of promoting the sale of property. *See generally* N.J.S.A. § 2C:21-7. However, as Defendant argues in support of its motion to dismiss, there is nothing in the Act or its legislative history that provides for a private cause of action. *See, e.g., Matter of State Comm'n of Investigation,* 108 N.J. 35, 41 (1987). Thus, because the Court cannot discern a basis for Plaintiff's claim under the Act, and because Plaintiff does not address this point in his opposition brief or otherwise set forth facts sufficient to state a claim under N.J.S.A. § 2C:21-7, Count Five of his Complaint must be dismissed at this time pursuant to Rule 12(b)(6).

### B. Remaining Counts

The remaining claims set forth in Plaintiff's complaint are based primarily on alleged conduct and misrepresentations made in connection with his purchase of two undeveloped lots at the Plantation. In order to determine whether those claims are subject to dismissal, a choice of law analysis is necessary. However, because the Court concludes that the United States District Court for the District of South Carolina is the more appropriate venue for this action, it will grant Defendant's motion to transfer.

Defendant's motion to transfer is governed by 28 U.S.C. § 1404(a), which provides: "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may

transfer any civil action to any other district or division where it might have been brought." The determination whether to transfer a case is in the discretion of the district court. *See Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 878 (3d Cir. 1995). A plaintiff's choice of venue is not to be "lightly disturbed," and the moving party has the burden of establishing both that the proposed transferee forum is proper and that a balancing of the relevant interests weighs in favor of transfer. *See id.* at 879.

As a threshold matter, the Court must determine whether the District of South Carolina is a "district in which this action might have been brought" pursuant to § 1404(a). A district is one in which an action "might have been brought" if: (1) it has subject matter jurisdiction over the claims; (3) personal jurisdiction over the parties; and (3) is a proper venue. *See Shutte v. Armco Steel Corp.*, 431 F.2d 22, 24 (3d Cir. 1970)("venue must have been proper in the transferee district and the transferee court must have had power to command jurisdiction over all of the defendants").

Here, the Court concludes that the District of South Carolina is a "district in which this action might have been brought." Indeed, it has (1) subject matter jurisdiction over the claims pursuant to 28 U.S.C. § 1332 because the parties are citizens of different states and the amount in controversy exceeds $75,000; (2) personal jurisdiction over the parties because Defendant is headquartered in South Carolina, incorporated under its laws, and conducts the majority of its business there; and (3) venue is proper because the majority of the alleged activities and events giving rise to Plaintiff's claims occurred in South Carolina, and South Carolina is the situs of the property at issue in this case. Accordingly, pursuant to 28 U.S.C. § 1404(a), the District of South Carolina is a district where this action might have been brought.

The Court must next determine whether the District of South Carolina is the more appropriate and convenient forum to hear this matter. Although the Third Circuit has emphasized that there "is no definitive formula or list of the factors to consider" when deciding a motion to transfer, it has set forth a variety of relevant private and public interests to consider in addition to those explicitly listed in § 1404(a). *See Jumara*, 55 F.3d at 879. The relevant private interests include: (1) plaintiff's forum preference; (2) defendant's forum preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties; (5) the convenience of witnesses; and (6) the location of sources of proof. *See id*. The relevant public interests include: (1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious, or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding local disputes at home; (5) the public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law in diversity cases. *See id*.

Having considered the above factors, the Court concludes that the relevant interests weigh in favor of transferring this case to the District of South Carolina. With regard to the private interests, the Court recognizes that a plaintiff's choice of forum is normally accorded great weight when deciding a motion to transfer. *See, e.g., id.* However, the degree of deference afforded that choice is reduced when, as here, the chosen forum has little connection with the dispute and the relevant acts giving rise to the claims occurred elsewhere. *See, e.g., Santi v. Nat'l Bus. Records Mgmt, LLC*, 722 F. Supp. 2d 602, 606 (D.N.J. 2010); *Yang v. Odom*, 409 F. Supp. 2d 599, 606 (D.N.J. 2006); *Ramada Worldwide v. Bellmark Sarasota Airport, LLC*, 2006 WL 1675067, at *3 (D.N.J. June 15, 2006)(plaintiff's choice of venue given less weight where New Jersey had little connection with the dispute and "[s]ubstantially all of the relevant acts

6

giving rise to [the] action occurred in Florida and the real property subject to the dispute, as well as most of both parties' material witnesses, are located there"). Indeed, in the instant case, the properties at issue were purchased and are located in South Carolina, presentations concerning those properties and containing alleged misrepresentations that form the basis of Plaintiff's claims took place in South Carolina, pertinent documents were exchanged and executed in South Carolina, and the construction and development of the sewer system and recreational facilities that Plaintiff alleges was delayed occurred in South Carolina and was observed by Plaintiff while he was there.[3]

Moreover, the vast majority of the potential witnesses to this dispute are located in South Carolina. In support of its motion, Defendant asserts that, although it is the only named defendant in the action, the issues relating to the alleged construction delays that are the foundation of Plaintiff's claims may involve information needed from numerous other parties, all of whom are located in South Carolina. Specifically, in addition to its own representatives, Defendant identifies the developer, general contractor, engineers, and planners for the Plantation, the subcontractor and utility authority responsible for the sewer improvements, the law firm at which the transaction for the sale of Plaintiff's lots took place, and the builder Plaintiff retained to develop and build on his lots. *See* Def.'s Br. at 3, 21-22. Plaintiff, on the other hand, identifies as potential witnesses only unnamed individuals from New Jersey with little apparent connection to the proofs of his case, including employees and patrons at the Bridgewater Marriot Hotel who attended the presentation in February 2005, employees and individuals on his flight

---

[3] In his opposition brief, Plaintiff asserts that "Defendant clearly should have expected that they might have to litigate in New Jersey" because they solicited Plaintiff in New Jersey, organized a presentation on the Plantation at a hotel in New Jersey, and included New Jersey regulations in some of the documents that Plaintiff received and allegedly signed in New Jersey. Pl.'s Br. at 16-17. However, as detailed above, the vast majority of the events, alleged misrepresentations, and potential evidence took place or is located in South Carolina. Moreover, the transfer determination under § 1404(a) does not turn on whether Defendant had sufficient contacts with New Jersey so as to establish personal jurisdiction; instead, as outlined above, it involves a weighing of the relevant private and public interests.

from Newark to Myrtle Beach, and the notary who witnessed him sign certain documents in New Jersey. *See* Pl.'s Br. at 2. Accordingly, the relevant private interests in this case weigh strongly in favor of transfer to the District of South Carolina.

On balance, the public interests also weigh in favor of transfer. Although New Jersey has an interest in protecting its citizens from alleged misrepresentations in connection with the sale of property, South Carolina likewise has a significant interest in this action insofar as many of those alleged misrepresentations took place in South Carolina and the property at issue was purchased and is located there. Similarly, although the Court acknowledges Plaintiff's concern that litigating in South Carolina as opposed to New Jersey may be more costly and burdensome for him, the practical considerations relevant to the transfer determination provide more support for Defendant's position. Indeed, as detailed above, nearly all of the potential witnesses[4] and evidence are located in South Carolina, and the vast majority of the alleged events and conduct that form the basis of Plaintiff's claims occurred there. Accordingly, having considered the relevant private and public interests, the Court concludes that transfer of this matter to the District of South Carolina is appropriate and in the interest of justice.

## IV. CONCLUSION

For the reasons above, the Court dismisses Count Five of Plaintiff's Complaint and transfers the remaining claims to the United States District Court for the District of South Carolina. An appropriate Order will follow.

/s/ JOEL A. PISANO
United States District Judge

Dated: February 24, 2012

---

[4] In that regard, the Court notes that Defendant cannot compel the majority of the potential witnesses it identifies to travel to New Jersey to testify, and that requiring them to do so would be extremely costly and burdensome.